We have six cases on our calendar this morning, four of them with the same appellant and appellee and other similarities and we have two cases submitted on the briefs that will not be argued, one from the MSPB and one from the Court of Federal Claims. Our first is the quartet, we might call them, WSOU Investments v. Google 2022-1063, Mr. Cummings. And I might suggest that while each of these cases has different patents and some differences in claim limitations, there's some commonality with respect to the law and we ask that you not needlessly repeat what needn't be repeated. Of course, Your Honor. Good morning. May it please the court, the judgment of the district court should be reversed here because the trilogy of zero-click, DIFAN, and VDPP show that processors were in the prior art at the time of the invention and are recognized by skilled artisans as a name for structure. Are there different types of processors and does it matter that this claim just says processor? Well, the specification shows that there are a lot of different types of processing structures that could be used. The designer would choose an appropriate processor structure and the specification lays out a number of different types of processor structures that those skilled in the art would understand could be used. Everybody knows what a CPU is, central processing unit, that's the heart of every computer, so everybody knows that. Microprocessor is a commonly recognized term that can only be seen in every one of our iPhones. The claim just says processor, does that matter? Well, it doesn't matter because the specification is clear that processor can be implemented using one of these different types of processors and it specifically mentions a central processing unit. So you're arguing that the specification informs the structural nature of this? Exactly, to the extent that processor alone does not, which we argue processor does connote structure to one skilled in the art by itself, but certainly as explained in the specification with all of these different types of processors that can be used to implement a processor, there's just no question that the processor in the claim is structural to a skilled artist. The claim reads processor configured to, so it clearly implies that there must be some structure to make the processor carry out the function and is there something in the record here, I don't think I saw it, that indicates that one skilled in the art would know exactly how to do this? Well, this court's cases are clear that if you recite a structure in the claim and its functions, that's fine. So if processor is structural, configured to operate in a certain way is perfectly acceptable. As to the question of what level of detail does the specification have to disclose in order for that to be clear structurally, processors have for decades displayed arrows and characters and words on a screen. That's a basic function that cases like Biomedino and Aristocrat say, you don't need to include that level of detail of understanding of one skilled in the art. Otherwise, the specifications just become unwieldy. Counsel, I want to ask you about the specification in particular. So in this case, the district court said that given the broad language at the top of column 13, that the specification treats the word processor so broadly as to be anything that manipulates data. If I look at what's at say around lines 6 through 14 or so, it does seem to say that the processor can be hardware alone, it can be software, it can be a combination. You're right, it does say it can be a CPU or maybe a microprocessor, I don't remember which one. But the concern I'm having that I think the district court had is that, yeah, sure, processor in some circumstances can be a very specific structure. But what do we do in this scenario where the specification basically says the processor can be anything that performs the function? Why is that not then so broad that it should be treated as a function? It's a little often go to the specification, have the specification say this term means anything, so that's informing the view. Well, what this really gets at is really any processor that you use can have attached memory that will impact the operation of the processor. It can be in software or it can be in firmware, which is essentially just another type of software that's a little bit more permanent. They're just explaining here not that it's so broad that there's no structure whatsoever. They're just explaining that there's different ways that you could take any one of these processing structures and implement it slightly differently to give you the flexibility that you need in your system so that it will operate and can be updated. I understand. The concern I have is that the question is whether processor is like a nonce word, whether it's a word that where someone who's trying to figure out the scope of the claim can't figure out what it is. And here it says it can be in hardware alone, a circuit or microprocessor. It could be firmware. It can be a combination of hardware and software, including firmware. Then it also says it could be an executable computer program with instructions on a general purpose computer or a special purpose processing unit. It's very broad. It's hard for me to figure out what the commonality in the structure is. Well, again, the firmware and the software that we're talking about, it's just different ways of implementing the particular structure. Choose a digital signal processor as your processing device and you'll need associated memory and firmware and the like to go along with it. They're just trying to explain here that there's different ways that you can configure the processing structure. But is the processor structure hardware? Is it software? Is it a combination of hardware and software? Is it anything that is in a digital system that can process something? What is the structure? Well, the structure can be hardware and it lists particular hardware devices. DiFAN says that software is a structure. And so just because... But DiFAN involved different facts. That was reversed, I recall, because there was evidence and expert testimony that wasn't reflected in the decision. This is not DiFAN. Well, we think it is because the DiFAN patent had an earlier priority date. So any software that existed at the time of the DiFAN patent that would allow you to display anything whatsoever was also available in the prior art for this patent, which was invented later. Did you present evidence to that effect to the district court judge? Of the different dates of the... And we know that about prior art processors, what the word means, is there any dictionary definitions? Is there any expert testimony? Is there prior art that might talk about what a processor is? Do you have anything like that? Neither side presented expert testimony. We presented evidence from the specification that showed it was structural. We also, on appeal, identified additional sections of the specification. You're saying that a processor can be software, hardware. That sounds to me so general and vague that it amounts to means. Means without structure. But then you'd have to ignore the section where it says the processor can be implemented with these particular structures. And references to computer program instructions code can be in firmware. It's really getting to how you implement any software that would be used in association with the process. Because we admit that a processor needs to be programmed in order to operate. Can I ask you a different question? Yes. Assuming momentarily that we determined that the district court got it right, that this is means plus function. Where did you preserve your argument that the claims aren't indefinite, even if in means plus function format, because the specification discloses corresponding structure? And specifically, where did you say what your proposed corresponding structure is? What did you identify as the corresponding structure? Well, because I think everybody agreed this is a computer-implemented invention if 112.6 applies. So it would be the algorithm. Where am I going to find that? I'll be honest with you. I don't think you identified the corresponding structure to the district court. I think you just asserted that this is in means plus function format. And then in the next step of if it were in means plus function format, identifying what your proposed claim construction would be, would be to identify the corresponding structure. And then, of course, the claim construction is that that term means that corresponding structure plus its equivalents that will perform the claimed function. But I don't see that in your briefing. I think that our position was at the district court that, and yeah, it comes from the weird sequencing of the, you know, we had to go first, even though we didn't have the burden of proof. But I think our position was that they didn't meet their burden to show that 112.6 applied. Counsel, you're well into your rebuttal time. You can continue or save it. I'll save the rest of my time. Thank you, Your Honors. Mr. Mayergoers. Good morning, Your Honors. And may it please the Court. After evaluating the parties' arguments and examining the intrinsic evidence, including WSOU's own citations, the district court correctly held that the term processor configured to provide a preemptive user output is subject to 112.6 and that the specification fails to disclose any corresponding algorithms for performing the recited function. Counsel, there are a number of cases where courts have said that the word processor for doing something isn't always in means-plus-function format. There are cases where, in particular circumstances, it was found not to be in means-plus-function format. What makes this case special that you think the word processor configured for? What about that language specifically makes this case different than those other cases? I'd like to answer it in two parts. First, as Your Honor points out, there is no categorical rule one way or another for processor. It depends on the particular context, how it's used in intrinsic evidence. And in this case, as the district court found, it's column 13, lines 6 through 21, where the patent itself explains that in the context of the 045 patent, the term processor is broadly referred to as anything that can be implemented in software, in hardware, in firmware, or any combination thereof, and presented with similar circumstances and similar evidence in Williamson, Egenera, and Bosch. This court found that the limitation triggered section 1126, given how broadly and generally it was described. But aren't all those things that are listed in column 13 just alternative types of structure? The software, the firmware, the hardware, computer engineers will tell you that software and hardware are the same. Aren't those just different variations on the theme? And it's not so broad that it covers everything under the sun, because it only covers those things that perform the function recited in the claim. Well, Your Honor, I think here it makes clear that it is very broad. The discussion of hardware, firmware, or software is not limiting. In fact, it's expansive. And it says, yes, these three things refer to anything that can perform the function. That's just describing the structure. At least that's what your adversary would argue, I suspect. Right. But the problem, I think, is that is not structure. That is a broad category of anything whatsoever that could perform various functions. And it is in those circumstances that section 1126 applies. As this court has explained in cases such as Williamson and Egenera, what animates the purpose of section 1126 is to avoid the problem of a patentee seeking to engage in purely functional claiming while trying to avoid or circumvent section 1126. And again, in cases such as Williamson and Egenera and Bosch... Williamson talked about a module. Is a processor somewhat different than module, just looking at those words themselves? In the abstract, yes, but not how they're used, not how processor is used in the specification here in this context. Because in the 045 patent, as Judge Stoll pointed out, I think in columns 13, lines 6 through 21, it says hardware, software, firmware. And in Williamson, this court found that section 1126 applied because the term module was used as a general description for software or hardware that performed a specified function. This case is really analogous to that. And similarly, in Egenera, this court applied section 1126 because the term logic to modify, as it was used in that context and the evidence showed, that that term encompassed software, firmware, circuitry, or any combination thereof to refer to a general category of whatever could perform the function. And it just... How should the patentee have recited this limitation for a processor to avoid 112? I think one of the possibilities would have been to not, well, to claim a specific type of processor. That would perhaps connote structure. A processor, you made the argument that, well, if it said program, that might have been different. Is that your position? No, I don't think so. I think if they were specific in terms of what does it matter? Yes, because the inquiry is, does the claim language connote sufficient structure to perform the recited function? Was it necessary for them to have disclosed an algorithm? Certainly for step two, if it is a means plus function limitation, it requires an algorithm. I'm sorry, Your Honor, go ahead. I just want to point out, do all means plus function limitations require an algorithm? Obviously, if it's hardware, does it really need to have... What if it was a microprocessor? What if the only corresponding structure was a microprocessor? Of course, it wouldn't require an algorithm, would it? Well, in this case, actually, even if the claim said microprocessor instead of processor, there's no dispute that what is necessary to perform the function... But what if what was disclosed in the  If the corresponding structure in the specification was some sort of hardware, like a microprocessor, would you still think that you needed to have an algorithm? I think it would depend on the specification, because I'm pausing, because under 112.6, if it's a general purpose computer or a microprocessor that requires programming in and of itself, then yes, we would require an algorithm. As counsel points out, the processor here alone is inadequate to perform the claim function. What it requires, there's no dispute, is programming. This programming is unspecified, it's not recited in the claim language, and it's not disclosed in the specification. I didn't mean to hijack your answer to the prior question, so please continue. I'm sorry, did I answer your question, Judge Lynn? Yeah, I think so. I've got another question. The claim says a processor configured to move, et cetera, et cetera, and you argued in your brief, well, it's missing the programming, but in this context, doesn't configured to mean the same thing as programmed? How else do you implement a processor, which is a software-based concept, without some sort of programming? I'd like to answer that in two parts. Yes, I think configured to calls out for programming. It requires programming. There's no dispute about that, but this Court's precedent, I believe, in cases such as Rain and others addressed in our brief make clear that configured to, in and of itself, is not structural. It is purely functional, and it requires something, it requires some sort of structure. You know, all those cases, you've got to read them in context, and I hear your argument, and you can find that language in those cases, but these are all sort of contextually based, and here it's a processor, which is inherently a software kind of thing. So, I don't know how else you implement a processor other than program, so I think in this context, it seems to me I'm having a hard time saying this is not equivalent to saying a processor program to do X, Y, and Z. It may be, Your Honor. I don't think it ultimately changes the analysis or is a basis for disturbing the Court's reasoning, because even if it is a processor program to, and it's subject to 126, what we are still missing is any corresponding algorithm or structure for performing the recited function. So, that's step two. That is step two, Your Honor. Let me ask you another question. In electronics arts, we frequently see claims that talk about an oscillator connected to an amplifier connected to a modulator. In a sense, these are all functional words, an oscillator, an amplifier, a modulator. We would see a claim that would say, for example, an oscillator configured to generate a signal when turned on. I don't think anybody would say that's a 112.6 means plus function clause. Why is this so different? Well, I think for two reasons. Processor here is much more broader than oscillator. But that's not the question, is it? Well, it is in this context, as Your Honor pointed out. It's context dependent. And here, in the context of the 045 patent, the term processor at column 13, lines 6 through 21, is really anything and everything that can perform a function. So, to use your example, Your Honor, they said oscillator in the claims and then expanded the term oscillator in the specification to be anything and everything that could perform a recited function. It would be analogous to this case here. And I'd just like to make two more quick points. I know DIFAN came up, not VVPP specifically, so I'll wait for that. But DIFAN, as Your Honor pointed out, is fundamentally different from the present case in that what animated DIFAN was that there was unchallenged, unrebutted testimony from defendant's corresponding structure. There is no such evidence here. Unless Your Honors have any questions, I would ask that the district court's judgment be affirmed. Thank you. Thank you, Your Honor. Mr. Mayorkas, Mr. Cummings has some rebuttals on. Just a few items, Your Honors. First of all, getting back to the question about the top of column 14, breadth does not mean that it's indefinite. The software can be a structure as ZeroClick and DIFAN held. Firmware is another type of software. And so really all the top of column 14 is saying is that it can be implemented with these structures, including with different types of software structures. And then getting back to the briefing below, because of the burden, we didn't have to present any evidence at all. Oh, because of the burden from, like, Williamson or... Because they had the burden to prove that 112.6 applied. And, you know, there's cases that say... I understand what you're saying, but what do you do in a circumstance like this where it is just a claim construction, right? They're arguing that your claim is indefinite. They've said 112.6 applies. And in this circumstance where you haven't identified what the corresponding structure would be in the event that the court found that 112.6 actually applied, how is the district court to evaluate your position on step two if the district court finds that, in fact, it is in means-plus function format? Well, since the district court... I guess the trouble that I'm having is that we explained to the district court why it was structural, and we didn't feel like we needed to go any further because they hadn't met their burden. And then just one last item. This idea that the patent had unclaimed and unspecified programming. Well, DIFAN and ZeroClick didn't include the source code in the patent either, but the court still found that the code there was structural. Google doesn't explain why, in this instance, the code has to be specified and claimed. But even in their argument today, they didn't explain the essential inquiry about whether a skilled artisan would understand processor to be structural. It's not in their briefs below. It's not in their brief here. It's not in their argument today. They didn't meet their burden, so we asked the court to reverse the judgment of the district court. Thank you. Thank you, counsel. The case is submitted.